UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

INTERNATIONAL DIAMOND
IMPORTERS, INC. d/b/a IDI DESIGN AND
MEIRA T. DESIGNS,

                  Plaintiffs,

     - against -

ORIENTAL GEMCO (NY), INC.,
ORIENTAL GEMCO HK CO., ORIENTAL
GEMCO PVT. LTD., and N.K. NIGAM,

                  Defendants.

------------------------------------------------------- X

**OPINION AND ORDER**

**14-cv-3506 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

       International Diamond Importers, Inc., d/b/a IDI Design and Meira T.

Designs ("Meira T." or "Plaintiff") brings this action against Oriental Gemco (NY)

Inc. ("Oriental NY"), Oriental Gemco HK Co. ("Oriental Hong Kong" or "Oriental

HK"), Oriental Gemco Pvt. Ltd. ("Oriental India), and N.K. Nigam (collectively

referred to as "Defendants").[1]  Plaintiff brings claims for copyright infringement,

---

[1]    United Gemco, Inc. was initially included as a defendant. *See* First
Amended Complaint ("Compl.) ¶ 1.  On May 22, 2014, United Gemco entered into
a Consent Judgement with Plaintiff and was dismissed from the case. *See* Consent

federal trade dress infringement, federal unfair competition, state law deceptive business practice, and state law unfair competition.

Defendants move to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6).  Alternatively, Defendants move to dismiss under the doctrine of forum non conveniens pursuant to 28 U.S.C. § 1404.  Plaintiff cross-moves for jurisdictional discovery.

For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.  Plaintiff's motion for jurisdictional discovery is GRANTED.

## II.   BACKGROUND

### A.   Facts

#### 1.   Plaintiff

Meira T. is a New York company that designs,  manufactures, and sells "unique, high quality" jewelry in the United States and abroad.[2]  Meira T.'s jewelry is sold in "prestigious stores in the United States, London, Japan, Hong Kong, and Singapore . . . such as Saks Fifth Avenue, Bloomingdales, Barneys,

---

Judgement for Defendant United Gemco ¶ 3.

[2]      Compl. ¶¶ 7, 13.

Harrods and Neiman Marcus," and in boutiques in New York and California.[3]
Plaintiff also sells the Meira T. products at jewelry and gift shows nationally and
abroad.[4]  Plaintiff has "spent substantial sums of money" promoting Meira T.
jewelry to the jewelry industry and consuming public through print advertisements,
mail and email campaigns, and appearances at trade and trunk shows.[5]

Meira T. jewelry is made with gold, diamonds, and other precious
stones and the collections feature necklaces, bracelets, and earrings.[6]  The brand is
known for pieces with "signature asymmetrical off-center designs."[7]  Plaintiff
owns three Copyright Registrations covering seven of the pieces included in the
Complaint[8] and a pending Copyright Application for the Fall 2011 Earrings.[9]
Plaintiff does not own any relevant registered trademark.  However, Plaintiff
claims Meira T. jewelry has a protectible trade dress which "incorporates a
distinctive off-center design comprising a large center jewel or piece with the size

---

[3]      *Id.* ¶ 23.

[4]      *See id.* ¶ 25.

[5]      *Id.* ¶ 24.

[6]      *See id.* ¶¶ 14, 27–28.

[7]      *Id.*

[8]      *See id.* ¶ 16; Certificates of Registrations, Exs. A-C to Compl.

[9]      *See* Compl. ¶ 16; Copyright Applications, Ex. E to Compl.

and/or quantity of pendants on one side being greater than the other side."[10]

### 2. Defendants

Oriental NY is a New York corporation founded in 1996,[11] whose business is to sell jewelry made with precious metals and stones.[12] Plaintiff claims Oriental NY sells jewelry that infringes on its copyrights and trade dress to jewelry stores and individual customers in New York and across the United States.[13]

I will refer to Oriental HK and Oriental India collectively as the Foreign Defendants. Oriental HK is located in Hong Kong,[14] and is a "wholesaler of precious and semi precious stones."[15] According to Defendants, Oriental HK does not do business in New York or the United States, does not sell any goods directly or advertise or solicit business in New York or anywhere in the United States, and owns no real property in New York or anywhere in the United States.[16]

---

[10]   Compl. ¶ 18.

[11]   *See id.* ¶ 9; 7/14/14 Declaration of N.K. Nigam, President of Oriental NY, in Support of Defendants' Motions to Dismiss ("N.K. Nigam Dec.") ¶¶ 23–24.

[12]   *See* N.K. Nigam Dec. ¶ 24.

[13]   *See* Compl. ¶ 8.

[14]   *See id.* ¶ 9; N.K. Nigam Dec. ¶¶ 9, 13; Defendants' Memorandum of Law in Support of Motions to Dismiss ("Def. Mem."), at 2.

[15]   N.K. Nigam Dec. ¶ 14.

[16]   *See id.* ¶¶ 15, 17–19, 21. *See also* Def. Mem. at 2.

Plaintiff claims that Oriental HK "manufactures and distributes" infringing products "to jewelry stores and directly to consumers," and markets the infringing products to customers in New York and across the United States.[17]

Oriental India is a company based in India, which started in the 1970s as a family business.[18]  Defendants assert that Oriental India hand cuts stones and acts as a supplier of finished stones.[19]  Defendants further claim that Oriental India does no business in New York or the United States, does not sell goods directly to customers in New York or the United States, does not advertise or solicit business in New York or the United States, and owns no real property in New York or in the United States.[20]  Plaintiff claims that Oriental India "manufactures and distributes" infringing products "to jewelry stores and directly to consumers," and markets these products to customers in New York and across the United States.[21]

As discussed further below, the relationship between the three corporate entities is unclear and the subject of dispute.  Plaintiff asserts that the

---

[17]     Compl. ¶ 9.

[18]     *See* N.K. Nigam Dec. ¶ 3; Def. Mem. at 3.

[19]     *See* N.K. Nigam Dec. ¶ 3.

[20]     *See id.* ¶¶ 5, 7–8, 11.  *See also* Def. Mem. at 2.

[21]     Compl. ¶ 10.

three companies make up "one organization with manufacturing in Hong Kong and India and its sales office [is] in New York."[22]  At various points, Plaintiff describes the three companies as "affiliates,"[23] alleges that Oriental NY is "controlled by Defendants, and [is] merely a sales representative of Oriental HK and Oriental India,"[24] that Oriental NY acts as the Foreign Defendants' "agent,"[25] and Oriental NY is a domestic subsidiary of the Foreign Defendants.[26]

Defendants assert a completely different relationship.  They claim that the Oriental Gemco companies "are three separate companies which sell jewelry in different countries."[27]  Despite their independence, they use the same name to "portray[] a global presence in the market of New York diamond companies."[28] Oriental NY purchases jewelry from the Foreign Defendants, but not exclusively,

---

[22]     Plaintiff's  Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Opp. Mem."), at 1.

[23]     *Id.* at 9.

[24]     *Id.*

[25]     *Id.*

[26]     *See id.* at 12.

[27]     Def. Mem. at 2.

[28]     7/14/14 Declaration of Prateek Nigam, Director of Oriental NY, in Support of Defendants' Motions to Dismiss ("First Prateek Nigam Dec.") ¶ 5.

as it purchases jewelry from other vendors in Hong Kong and India.[29]  While the three companies are owned by members of the same extended family,[30] each has "different ownership structures" and "separate corporate affairs."[31]

Plaintiff alleges that N.K. Nigam is the "owner and principal officer" and "responsible for the control, management, operation, and maintenance of affairs of Oriental NY, Oriental HK, and Oriental India."[32]  Nigam, in turn, claims he is "not associated with or involved in the business dealings" of the Foreign Defendants.[33]

## B.   Claims

Plaintiff claims that Defendants have created, displayed and sold jewelry products that "utilize similar or identical features" giving Defendants' jewelry "a confusingly similar look that is intended to mimic" Meira T. jewelry in

---

[29]     *See id.* ¶ 6.

[30]     *See* N.K. Nigam Dec. ¶¶ 25–26.  *See also* First Prateek Nigam Dec. ¶ 5.

[31]     Def. Mem. at 2.

[32]     Compl. ¶ 11.  Plaintiff identifies Nigam only as President of Oriental NY. *See* Opp. Mem. at 2.  This is undisputed by Defendants.  *See* N.K. Nigam Dec. ¶ 1. Plaintiff maintains that he is personally liable for the infringing activities of all three companies.  *See infra* note 214.

[33]     N.K. Nigam Dec. ¶ 1.

violation of Plaintiff's rights.[34]  Plaintiff's counsel "has repeatedly written Oriental NY" requesting it cease from manufacturing and selling infringing products,[35] but all three Oriental Gemco companies have continued their infringing activities.[36] Plaintiff specifically claims that "Defendants have been displaying and accepting orders at trade shows and at their stores and plan to display this jewelry at the JCK trade show from May 30 to June 2, 2014 in Las Vegas."[37]  As a result of Defendants' infringing activities, Plaintiff has suffered irreparable harm and injury due to lost profits, and harm to its goodwill, reputation, and market share.[38]

### C.    Defendants' Motions to Dismiss and Plaintiff's Cross Motion for Jurisdictional Discovery

Defendants move to dismiss all claims.  They argue that (1) the court lacks personal jurisdiction over the Foreign Defendants as they do not have the requisite contacts with New York and the United States, (2) the court lacks subject matter jurisdiction over the state law claims, (3) the Foreign Defendants were improperly served in violation of the Hague Convention, and (4) Plaintiff has

---

[34]    Compl. ¶ 26.

[35]    *Id.* ¶ 30.

[36]    *See id.* ¶¶ 30–31.

[37]    *Id.* ¶ 1.

[38]    *See id.* ¶¶ 32–33.

failed to state a claim for relief for copyright infringement, trade dress infringement, unfair competition under the Lanham Act, unfair competition under New York state law, and for deceptive business practices under New York state law.  Defendants also argue that (5) under the doctrine of forum non conveniens, New York is an inappropriate forum to litigate this case and it should therefore be dismissed.

Plaintiff opposes each motion.  In addition, in response to Defendants' motions regarding the lack of personal jurisdiction over the Foreign Defendants and improper service, Plaintiff has moved for jurisdictional discovery.

## III.   LEGAL STANDARD

### A.      Rule 12(b)(2) Motion to Dismiss

A plaintiff has the burden of proving personal jurisdiction by a preponderance of the evidence.[39]  When assessed on written submissions, "a plaintiff need only allege facts constituting a prima facie showing of personal jurisdiction to survive a Rule 12(b)(2) motion."[40]  The plaintiff may make such a showing with "an averment of facts that, if credited, would suffice to establish

---

[39]     *See Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863, 865 (2d Cir. 1996).

[40]     *M & M Packaging, Inc. v. Kole*, 183 Fed. App'x 112, 114 (2d Cir. 2006) (citation omitted).

jurisdiction over the defendant."[41]   In this posture, the court must construe all allegations in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor.[42]   However, "a plaintiff may not rely on 'conclusory non-fact-specific jurisdictional allegations' to overcome a motion to dismiss."[43]

**B.    Rule 12(b)(1) Motion to Dismiss**

Rule 12(b)(1) allows a party to assert the defense that the court lacks subject matter jurisdiction to hear a claim.  "Federal courts are courts of limited jurisdiction, and '[t]he validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties.'"[44]   "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance

---

[41]    *Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (quotation marks and citation omitted).

[42]    *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993). *See also In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (citation omitted).

[43]    *Doe v. Delaware State Police*, No. 10 Civ. 3003, 2013 WL 1431526, at *3 (S.D.N.Y. Apr. 4, 2013) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

[44]    *South New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982)).

10

of the evidence."[45]  Courts also have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."[46]

> "For the purpose of determining whether a district court has federal question jurisdiction pursuant to Article III and 28 U.S.C. § 1331, the jurisdictional inquiry 'depends entirely upon the allegations in the complaint' and asks whether the claim as stated in the complaint 'arises under the Constitution or laws of the United States.'"[47]  "When . . . the defendant challenges the factual basis for the plaintiff's assertion of jurisdiction, '[j]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"[48]  "In deciding the motion, the court 'may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it]

---

[45]   *Al-Khazraji v. United States*, 519 Fed. App'x 711, 713 (2d Cir. 2013) (citing *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012)).

[46]   *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006).

[47]   *South New England*, 624 F.3d at 132 (quoting *Carlson v. Principal Fin. Group*, 320 F.3d 301, 306 (2d Cir. 2003)).

[48]   *Jordan v. Verizon Corp.*, 391 Fed. App'x 10, 12 (2d Cir. 2010) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

11

may not rely on conclusory or hearsay statements contained in the affidavits.'"[49]

## C.    Rule 12(b)(5) Motion to Dismiss

"'Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.'"[50] Under Rule 12(b)(5), a court may dismiss an action against one or more defendants on the ground of "insufficient service of process."  Plaintiff must prove the sufficiency of service.[51]  "[D]efective service [cannot] be ignored on the mere assertion that a defendant had 'actual notice.'"[52]

## D.    Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court evaluates the sufficiency of the complaint under the "two-pronged approach"

---

[49]    *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 701 F. Supp. 2d 568, 580–81 (S.D.N.Y. 2010) (alteration in original) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)).

[50]    *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).

[51]    *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005) (citing *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003)).

[52]    *Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. DE C.V.*, 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006) (quoting *Russ Berrie & Co. v. T.L. Toys (HK) Ltd.*, No. 01 Civ. 4715, 2002 WL 31458232, at *2 (S.D.N.Y. Nov. 4, 2002)).

12

suggested by the Supreme Court in *Ashcroft v. Iqbal*,[53]  *First*, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[54]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[55]  *Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[56]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[57]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[58]  Plausibility "is not akin to a probability

---

[53]    556 U.S. 662, 669 (2009).

[54]    *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[55]    *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[56]    *Id.* at 680.  *Accord Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).

[57]    *Twombly*, 550 U.S. at 564.

[58]    *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

13

requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[59]

### D. Jurisdictional Discovery

A district court has "considerable procedural leeway" when deciding a motion to dismiss for lack of personal jurisdiction and "may permit discovery in aid of the motion."[60]  While a plaintiff is not required to make a prima facie showing of jurisdiction before a court orders jurisdictional discovery,[61] a plaintiff may not make "conclusory non-fact-specific jurisdictional allegations and thus obtain extensive discovery on that issue."[62]

## IV. APPLICABLE LAW

### A. 12(b)(1) Motion to Dismiss

A federal district court may exercise jurisdiction only if so authorized by the Constitution and by statute.[63]  The Constitution extends the federal judicial

---

[59]    *Id.* (quotation marks omitted).

[60]    *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

[61]    *See Ehrenfeld v. Mahfouz*, 489 F. 3d 542, 550 n.6 (2d Cir. 2007) (finding that it would be "legal error" to "forbid[] jurisdictional discovery any time a plaintiff does not make a prima facie showing of jurisdiction.").

[62]    *Jazini*, 148 F.3d at 185–86.

[63]    *See* U.S. Const. art. III, § 1 ("The judicial Power of the United States shall be vested in one supreme Court, and in such inferior Courts as the Congress may

power to, inter alia, all cases arising under the Constitution, laws, and treaties of the United States, and to cases between citizens of different states.[64]

28 U.S.C. § 1332 confers subject matter jurisdiction on the federal district courts, giving them original jurisdiction over cases "where the matter in controversy exceeds $75,000, exclusive of interest and costs and is between . . . (2) citizens of a State and citizens or subjects of a foreign state[.]"  "The general rule requiring complete diversity between opposing parties is explicit and unequivocal."[65]  A corporation takes the citizenship of both the state in which it is incorporated and the state where "it has its principal place of business."[66]  Diversity of citizenship is determined as of the time the lawsuit is filed.[67]

28 U.S.C. § 1338(a) provides federal district courts with "original jurisdiction of any civil action arising under any Act of Congress relating to

---

from time to time ordain and establish.").  *See also Exxon Mobil Corp. v. Allapattah Servs., Inc.* 545 U.S. 546, 552 (2005) ("The district courts of the United States, as we have said many times, are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." (quotation marks and citation omitted)).

[64]  *See* U.S. Const. art. III, § 2.

[65]  *International Shipping Co., S.A., v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir. 1989).

[66]  28 U.S.C. § 1332(c)(1).

[67]  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989).

patents, plant variety protection, copyrights and trademarks[,]" and exclusive

jurisdiction with respect to "patents, plant variety protection, or copyrights."  28

U.S.C. § 1338(b) grants federal district courts original jurisdiction over "any civil

action asserting a claim of unfair competition when joined with a substantial and

related claim under the copyright, patent, plant variety protection or trademark

laws."  Finally, 28 U.S.C. § 1367(a) permits district courts to exercise

supplemental jurisdiction over "claims that are so related to claims in the action

within [the court's] original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution."  A district court

may decline to exercise such jurisdiction when it has dismissed all claims over

which it has original jurisdiction.[68]

### B.    12(b)(2) Motion to Dismiss

"Federal courts are to apply the personal jurisdiction rules of the

forum state."[69]  A court must undertake a "two-step inquiry" to determine if it can

exercise personal jurisdiction over a foreign defendant.[70]  "First, we determine

whether the defendant is subject to jurisdiction under the law of the forum state –

---

[68]     *See* 28 U.S.C. § 1367(c)(3).

[69]     *Penguin*, 609 F.3d at 35.

[70]     *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir.),
*cert. denied*, 134 S. Ct. 2888 (2014).

here, New York.  Second, we consider whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution."[71]  Additionally, there are two types of personal jurisdiction: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction."[72]

### 1.    General Jurisdiction

Under section 301 of the New York Civil Practice Law and Rules ("CPLR"), a foreign corporation is subjected to general jurisdiction if it is "doing business" in the State.  Under this test, a foreign corporation is amenable to suit in New York if it "'has engaged in such a continuous and systematic course of 'doing business' [in New York] that a finding of its 'presence' [in New York] is warranted.'"[73]

However, general jurisdiction only comports with due process "when a corporation's contacts with a state are 'so continuous and systematic as to render

---

[71]    *Id.*

[72]    *Goodyear Dunlop Tires Operations, S.A. v. Brown*, , ⸺ U.S. ⸺, 131 S. Ct. 2846, 2851 (2011).

[73]    *Sonera*, 750 F.3d at 224 (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 77 N.Y.2d 28, 33, 563 N.Y.S.2d 739, 565 N.E.2d 488 (1990)) (alterations in original).

[it] essentially at home in the forum State.'"[74]  "[O]nly a limited set of affiliations with a forum will render a defendant" "at home" such that jurisdiction is appropriate.[75]  The "paradigm" instances of when a corporate defendant is "at home" are in its "place of incorporation and principal place of business."[76]  Generally, "a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum."[77]  It is possible that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State," but this would be an "exceptional case."[78]

### 2.    Specific Jurisdiction

If general jurisdiction is not satisfied, the court determines if there is specific jurisdiction.  Under section 302(a)(2) of the CPLR, jurisdiction may be

---

[74]    *Daimler AG v. Bauman*, ─── U.S. ───, 134 S. Ct. 746 (2014) (quoting *Goodyear*, 131 S. Ct. at 2851).

[75]    *Id.* at 760.

[76]    *Id.* at 735.

[77]    *Sonera*, 750 F.3d at 226 (citing *Daimler*, 134 S. Ct. at 761) (alterations in original).

[78]    *Daimler*, 134 S. Ct. at 761 n.19.

asserted over a non-domiciliary that "commits a tortious act within the state."

      The due process requirements for specific jurisdiction requires both a "minimum-contacts" test and a "reasonableness" inquiry.  *First*, the plaintiff must demonstrate that "the claim arises out of, or relates to, the defendant's contacts with the forum."[79]  As the Supreme Court recently explained, "the relationship [between the defendant and the forum state] must arise out of contacts that the 'defendant *himself*' creates with the forum State."[80]  Though "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties . . . . a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."[81]  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the

---

[79]    *Licci ex rel. Licci v. Lebanese Canadian Bank SAL* ("*Licci VI*"), 732 F.3d 161, 170 (2d Cir. 2013).  *Accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (for the proper exercise of specific jurisdiction, the defendant must have "purposefully directed" his activities at the forum and the litigation must "arise out of or relate to" those activities).

[80]    *Walden v. Fiore*, — U.S. — , 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King*, 471 U.S. at 475).

[81]    *Id.* at 1123 (citation omitted).

19

State."[82]  *Second*, jurisdiction must also be reasonable.  Courts must weigh the

following factors in evaluating the "reasonableness" requirement of due process:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.[83]

## C.    12(b)(5)

The acceptable methods of service of a summons and complaint are

set forth in Rule 4(h), which establishes that

> a foreign corporation . . . must be served (1) in a judicial district of the United States (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . . or (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery.

In turn, Rule 4(f) permits service outside the United States "by any internationally

agreed means of service that is reasonably calculated to give notice, such as those

---

[82]    *Id.* (quoting *Burger King*, 471 U.S. at 475).

[83]    *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–14 (1987).

20

authorized by the Hague Convention."[84]

However, "[w]here service on a domestic agent [of a foreign entity] is valid and complete under both state law and the Due Process Clause . . . the Convention has no further implications."[85]  Thus, if the corporate defendant is served according to Rule 4(h)(1), the requirements for service under the Hague Convention do not apply:  "The only transmittal to which the [Hague] Convention applies is a transmittal abroad that is required as a necessary part of service."[86]

Rule 4(h)(1) authorizes service in a judicial district upon a foreign corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual." Rule 4(e) in turn permits service "by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located."  Section 311(a) of the CPLR provides that "[p]ersonal service upon a corporation . . . shall be made by delivering the summons . . . upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or

---

[84]    Subject to enumerated restrictions, Rule 4(f)(2) permits alternative service "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice."

[85]    *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988).

[86]    *Id.*

by law to receive service." "New York courts have construed the statute liberally, sustaining service of process 'if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice.'"[87]

### D.   12(b)(6)

#### 1.   Copyright Infringement

"To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant."[88]  Courts have held that a copyright claim must allege "(1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts during what time the defendant infringed the copyright."[89]

---

[87]   *Local 78, Asbestos, Lead & Hazardous Waste Laborers, AFL-CIO v. Termon Constr., Inc.,* No. 01 Civ. 5589, 2003 WL 22052872, at *4 (S.D.N.Y. Sept. 2, 2003) (quoting *Fashion Page, Ltd. v. Zurich Ins. Co.,* 50 N.Y.2d 265 (1980)). *Accord Dezonie v. Asset Prot. & Sec., Inc.*, No. 08 Civ. 11261, 2009 WL 187352, at *4 (S.D.N.Y. June 30, 2009) ("New York courts have construed § 311 broadly.") (citing *Tadco Constr. Corp. v. Peri Framework Sys., Inc.*, 460 F. Supp. 2d 408, 410 (E.D.N.Y. 2006)).

[88]   *Yurman Design, Inc. v. PAJ, Inc. ("PAJ, Inc.")*, 262 F.3d 101, 109-10 (2d Cir. 2001).

[89]   *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 35–36 (S.D.N.Y. 1992) (citing *Franklin Elec. Publishers v. Unisonic Prod. Corp.,* 763 F. Supp. 1, 4 (S.D.N.Y. 1991). *Accord Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 440 (S.D.N.Y. 2012).

### a.   Ownership of a Valid Copyright

The validity of a copyright depends upon its originality.[90]  Where a plaintiff holds a certificate of copyright registration made before or within five years of the first publication of a work, the certificate constitutes prima facie evidence of "the validity of the copyright and of the facts stated in the certificate."[91]  Thus, the certificate of registration raises a rebuttable presumption that the work in question is copyrightable,[92] as well as original.[93]

### b.   Infringement

"The second element is further broken down into two components: 'a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible

---

[90]    *See PAJ, Inc.*, 262 F.3d at 109 (citing *Feist v. Rural Publ'ns*, 499 U.S. 340, 345–47 (1991); U.S. Const. art. I, § 8, cl. 8).

[91]    17 U.S.C. § 410(c).

[92]    *See M. Lady, LLC v. AJI, Inc.*, No. 06 Civ. 0194, 2007 WL 2728711, at *3 (S.D.N.Y. Sept. 19, 2007) (citing *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997)).

[93]    *See Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F. Supp. 2d 506, 514 (S.D.N.Y. 2003) (citing *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001)).

elements of plaintiff's.'"[94]

### i.    Actual Copying

Actual copying may be established "circumstantially by demonstrating that the person who composed the defendant's work had access to the copyrighted material . . . and that there are similarities between the two works that are probative of copying."[95]  "Access means that an alleged infringer had a 'reasonable possibility' — not simply a 'bare possibility' — of hearing [or seeing] the prior work."[96]  Access to a copyrighted work may be inferred from the fact that

---

[94]   *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 601 (S.D.N.Y. 2010) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999) (quotation marks and emphasis omitted)).  *Accord Velez v. Sony Discos*, No. 05 Civ. 0615, 2007 WL 120686, at *7 (S.D.N.Y. Jan. 16, 2007) ("Essentially, the 'actual copying' question concerns whether the defendant copied the plaintiff's work as a factual matter, and the 'improper appropriation' analysis explores whether the copying that occurred was of such a nature that copyright infringement may have taken place as a matter of law.").

[95]   *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).  *Accord Adams v. Warner Bros. Pictures Network*, No. 05 Civ. 5211, 2007 WL 1959022, at *3 (E.D.N.Y. June 29, 2007) ("In the context of deciding whether the defendant copied at all (as distinguished from whether it illegally copied), similarity relates to the entire work, not just the protectible elements, and is often referred to as 'probative similarity.'" (citing *Fisher-Price, Inc. v. Well-made Toy Mfg., Corp.*, 25 F.3d 119, 123 (2d Cir. 1994))).

[96]   *Jorgensen*, 351 F.3d at 51 (quoting *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988)).

a work was widely disseminated at the time of copying.[97]  Wide dissemination is

established where "the allegedly infringed work has had considerable commercial

success or is readily available on the market."[98]

" "Similarities between the two works are probative [of copying] only

if the similarities 'would not be expected to arise if the works had been created

independently.'"[99]  "Under the probative similarity analysis used in this Circuit, the

Court must look at each work in its entirety, including protectible and unprotectible

elements."[100]

### ii.   Substantial Similarity

A plaintiff must also demonstrate that the similarity concerns

protected elements of the work at issue.[101]  "[C]opyright protection may extend

---

[97]    *See Boisson*, 273 F.3d at 270 (citations omitted).

[98]    *Silberstein v. Fox Entm't Group, Inc.*, No. 02 Civ. 1131, 2004 WL 1620895, at *7 (S.D.N.Y. July 19, 2004).

[99]    *Porto v. Guirgis*, 659 F. Supp. 2d 597, 608–09 (S.D.N.Y. 2009) (quoting *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 517 (S.D.N.Y. 2008)).

[100]   *Id.* at 609 n.4.

[101]   *See LaPine v. Seinfeld*, No. 08 Civ. 128, 2009 WL 2902584, at * 5 (S.D.N.Y. Sept. 10, 2009) ("Not all copying constitutes copyright infringement; the copying must amount to an improper or unlawful appropriation.") (citing *Boisson*, 273 F.3d at 268 ("Simply because a work is copyrighted does not mean every element of that work is protected.")).

only to those components of a work that are original to the author."[102]  "Original, as

the term is used in copyright, means only that the work was independently created

by the author . . . , and that it possesses at least some minimal degree of

creativity."[103]  Copyright protection only extends to the particular expression of an

idea – not the idea itself.[104]  Thus, under the doctrine of scènes à faire, "elements . .

. that flow naturally and necessarily from the choice of a given concept cannot be

claimed as original."[105]

   "'The standard test for substantial similarity between two items is

whether an ordinary observer, unless he set out to detect the disparities, would be

disposed to overlook them, and regard the aesthetic appeal as the same.'"[106]  "In

applying the so-called 'ordinary observer test,' we ask whether 'an average lay

---

[102]   *Feist,* 499 U.S. at 348.

[103]   *Id.* at 345.

[104]   *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 67
(2d Cir. 2010) ("This principle, known as the 'idea/expression dichotomy,'
'assures authors the right to their original expression, but encourages others to
build freely upon the ideas and information conveyed by a work.'" (quoting *Feist*,
499 U.S. at 349–50)).

[105]   *Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382,
392 (S.D.N.Y. 2005).  *Accord Williams v. Crichton*, 84 F.3d 581, 587–88 (2d Cir.
1996) ("[s]cènes à faire are unprotectible elements that follow naturally from a
work's theme rather than from an author's creativity").

[106]   *Gaito*, 602 F.3d at 66 (quoting *PAJ, Inc.*, 262 F.3d at 111).

26

observer would recognize the alleged copy as having been appropriated from the copyrighted work.'"[107]

"[W]hen faced with works 'that have both protectible and unprotectible elements,'" the usual "ordinary observer" test becomes "more discerning,"[108] and the court "must attempt to extract the unprotectible elements from . . . consideration and ask whether the protectible elements, standing alone, are substantially similar."[109] "No matter which test we apply, however, we have disavowed any notion that 'we are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable.'"[110]  Instead, the court is principally guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly

---

[107]   *Id.* (quoting *Knitwaves Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995)).

[108]   *Id.* (quoting *Fisher-Price*, 25 F.3d 119 at 123).

[109]   *Id.* (quoting *Knitwaves*, 71 F.3d at 1002).

[110]   *Id.* (quoting *Knitwaves*, 71 F.3d at 1002).  *Accord Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2d Cir. 2003) ("[W]hile the infringement analysis must *begin* by dissecting the copyrighted work into its component parts in order to clarify precisely what is not original, infringement analysis is not *simply* a matter of ascertaining similarity between components viewed in isolation.") (emphasis in original).

infringed work."[111]  "Accordingly, the Second Circuit has recognized that 'the

defendant may infringe on the plaintiff's work not only through literal copying of a

portion of it, but also by parroting properties that are apparent only when numerous

aesthetic decisions embodied in the plaintiff's work . . . are considered in relation

to one another.'"[112]  Ultimately, the inquiry focuses on whether the alleged

infringer has misappropriated "the original way in which the author has 'selected,

coordinated, and arranged' the elements of his or her work."[113]

### 2.    Trade Dress Infringement

Pursuant to 15 U.S.C. § 1125(a), a cause of action for trade dress

infringement may be sustained under the Lanham Act.[114]  Section 43(a) of the

Lanham Act provides:

> [a]ny person who, on or in connection with any goods or
> services, or any container for goods, uses in commerce any

---

[111]    *Gaito*, 602 F. 3d at 66 (quoting *Tufenkian*, 338 F.3d at 133).  *Accord Boisson*, 273 F.3d at 272 (considering only those elements that alone are protectible "would result in almost nothing being copyrightable because original works broken down into their composite parts would usually be little more than basic unprotectible elements like letters, colors and symbols").

[112]    *Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 429 (S.D.N.Y. 2011) (quoting *Tufenkian*, 338 F.3d at 134).

[113]    *Knitwaves*, 71 F.3d at 1004 (quoting *Feist*, 499 U.S. at 358).

[114]    *See TrafFix Devices, Inc., v. Marketing Displays, Inc.*, 532 U.S. 23, 28–29 (2001).

word, term, name, symbol, or device, or any combination
thereof, or any false designation of origin, false or
misleading description of fact, or false or misleading
representation of fact, which [ ] is likely to cause confusion,
or to cause mistake, or to deceive as to the affiliation,
connection, or association of such person with another
person, or as to the origin, sponsorship, or approval of his
or her goods, services, or commercial activities by another
person [ ] shall be liable in a civil action by any person who
believes he or she is or is likely to be damaged by such
act.[115]

The purpose of trade dress protection is to "secure to the owner of the mark the
goodwill of his business and to protect the ability of consumers to distinguish
among competing producers."[116]

A plaintiff must prove "that (1) the claimed trade dress is
non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is
a likelihood of confusion between the plaintiff's goods and the defendant's."[117] "A
plaintiff must also offer a precise expression of the character and scope of the
claimed trade dress,"[118] and articulate the "elements of . . . design with specificity

---

[115]   15 U.S.C. § 1125(a)(1)(A).

[116]   *Two Pesos v. Taco Cabana*, 505 U.S. 763, 774 (1992) (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985)).

[117]   *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. App'x 389, 391 (2d Cir. 2003) (citation omitted).

[118]   *Id.* (quotation marks and citation omitted).

29

to be afforded trade dress protection."[119]

### 3.    Federal Unfair Competition

A Lanham Act unfair competition claim examines "whether the public is likely to be misled into believing that the defendant is distributing products manufactured or vouched for by the plaintiff."[120]  The Lanham Act prohibits any misrepresentation likely to cause confusion about the source of a product, in particular the use by any person of "any . . . name . . . likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association . . . with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."[121]

The Supreme Court has established "a narrow reading of 'origin of

---

[119]    *Shevy Custom Wigs, Inc. v. Aggie Wigs*, No. 06 Civ. 1657, 2006 WL 3335008, at *4 (E.D.N.Y. Nov. 17, 2006).

[120]    *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir. 1981) (citation and quotation marks omitted).

[121]    *L'Oreal USA, Inc. v. Trend Beauty Corp.*, No. 11 Civ. 4187, 2013 WL 4400532, at *14 (S.D.N.Y. Aug. 15, 2013) ("[T]he standards for false designation of origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section 32 (15 U.S.C. § 1114)."). *Accord Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002); *Estate of Ellington ex rel. Ellington v. Harbrew Imps. Ltd.*, 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011) ("A party establishes liability under [15 U.S.C. § 1125(a)] if it can demonstrate (1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are likely to cause confusion.") (citations and quotation marks omitted).

goods' in § 43(a) so as to minimize application in cases that obviously sought an extension of copyright protection through the trademark statute."[122]  The "phrase 'origin of goods' under the Lanham Act . . . refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."[123]

### 4.    State Law Unfair Competition

"In New York, 'the essence of unfair competition . . . is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'"[124]  The elements of an unfair competition claim under New York law are identical to the elements of an unfair competition claim under the Lanham Act, except that plaintiff must show "bad faith by the infringing party."[125]  "The inquiry into bad faith considers whether the defendant adopted its mark with the intention of capitalizing on the plaintiff's

---

[122]    *Expressway Music, Inc. v. Slep-Tone Entm't Corp.*, No. 12 Civ. 834, 2013 WL 5345969, at *2 (S.D.N.Y. Sept. 23, 2013).

[123]    *Id.* (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003)).

[124]    *Eyal R.D. Corp. v. Jewelex New York Ltd.*, 784 F. Supp. 2d 441, 447 (S.D.N.Y. 2011) (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34–35 (2d Cir. 1995)).

[125]    *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 541 (S.D.N.Y. 2012) (citations omitted).

reputation and goodwill and on any confusion between [its] and the senior user's product."[126]

### 5.    State Law Deceptive Business Practices

Section 349 of the New York General Business Law is a consumer protection statute.  It creates a private right of action protecting consumers from "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"[127]  A plaintiff bringing claims under section 349 must, "at the threshold, charge conduct that is consumer oriented."[128] "Under New York law, a deceptive act or practice that has a broader impact on consumers at large meets this threshold test."[129]

---

[126]    *Lopez v. Gap, Inc.*, No. 11 Civ. 3185, 2012 WL 3186546, at *15 (S.D.N.Y. Aug. 2, 2012) (quotation marks omitted).

[127]    N.Y. Gen. Bus. Law § 349(h), (a).  *See also Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 344 (1999); *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 127 (2d Cir. 2000).

[128]    *New York Univ. v. Continental Ins. Company*, 87 N.Y.2d 308, 320 (1995). *Accord MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997) ("The injury must be to the public generally as distinguished from the plaintiff alone."); *Gaidon*, 94 N.Y.2d at 344  ("As a threshold matter, in order to satisfy General Business Law § 349 plaintiff's claims must be predicated on a deceptive act that is 'consumer oriented.'" (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24–25 (1995))).

[129]    *Shapiro*, 212 F.3d at 126 (quoting *Oswego*, 85 N.Y.2d at 25) (quotation marks omitted).

Once a plaintiff meets the consumer-oriented threshold test, it must then show "that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that the plaintiff has been injured by reason thereof."[130] "A 'deceptive act or practice' has been defined as a representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"[131] The Second Circuit has held that a competitor can properly state a claim under section 349 if "the matter affects the public interest in New York."[132] Because section 349 is modeled after the Federal Trade Commission Act, federal courts have interpreted the statute's scope as limited to offenses that threaten the public interest, such as potential danger to public health or safety.[133]

---

[130] *Id.* (quoting *Gaidon*, 94 N.Y.2d at 344 (citations and quotation marks omitted)).

[131] *Id.* (quoting *Oswego*, 85 N.Y.2d at 25).

[132] *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)). *Accord Capitol Records, Inc. v. Wings Digital Corp.*, 218 F. Supp. 2d 280, 285–86 (S.D.N.Y. 2002).

[133] *See Sports Traveler v. Advance Magazine Publishers, Inc.*, No. 96 Civ. 5150, 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997). *Accord Securitron*, 65 F.3d at 264–65; *EFS Mktg., Inc. v. Russ Berrie & Co., Inc.*, 836 F. Supp. 128, 137 (S.D.N.Y. 1993), *aff'd in part, vacated in part, rev'd in part on other grounds*, 76 F.3d 487 (2d Cir. 1996); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 786 F. Supp. 182, 215–16 (citing *Vitabiotics Ltd. v. Krupka*, 606 F. Supp. 779 (E.D.N.Y. 1984)).

### 6.    Liability of Individual Defendants

#### a.    Personal Liability for Lanham Act Violations

It is well-established in the Second Circuit that "under the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active[,] conscious force behind [the defendant corporation's] infringement."[134]  A showing that an officer "authorized and approved the acts of unfair competition which are the basis of [the] . . . corporation's liability . . . is sufficient participation in the wrongful acts to make [the officer] individually liable."[135]  Furthermore, "in determining whether the officer's acts render him individually liable, it is immaterial whether . . . he knows that his acts will result in an infringement."[136]

#### b.    Personal Liability for Copyright Act Violations

"'[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held

---

[134]    *Cartier v. Aaron Faber, Inc.*, 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007). *Accord Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 913 (E.D.N.Y. 1988) (holding liable individual defendants who were directly involved in the purchase, approval and resale of infringing products) (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)).

[135]    *Bambu Sales, Inc.*, 683 F. Supp. at 913–14.

[136]    *Id.* at 913.

liable as a 'contributory' infringer.'"[137]   Contributory infringement includes

personal conduct that encourages or assists the infringement.[138]

Under a related theory of secondary copyright liability,. "a defendant

is vicariously liable for infringement where 'the right and ability to supervise

coalesce with an obvious and direct financial interest in the exploitation of

copyrighted materials – even in the absence of actual knowledge that the copyright

monopoly is being impaired.'"[139]   "'Individual officers of a corporation will be

vicariously liable for the corporation's infringing conduct' under these

circumstances."[140]   "While knowledge – either constructive or actual – is a required

element of contributory copyright infringement, it is not required to state a claim

---

[137]    *Faulkner v. National Geographic Enters.*, 409 F.3d 26, 40 (2d Cir. 2005) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

[138]    *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998).

[139]    *Smith v. Mikki More, LLC,* No. 13 Civ. 3388, 2014 WL 5042655, at *14 (S.D.N.Y. Oct. 9, 2014) (quoting *Viacom Int'l, Inc. v. YouTube, Inc.,* 676 F.3d 19, 36 (2d Cir. 2012)).

[140]    *Id.* (quoting *Jonathan Adler Enters., LLC v. Ins & Outs Pottery, Inc.,* No. 12 Civ. 4866, 2012 WL 4471540, at *1 (S.D.N.Y. Sept. 26, 2012).  *Accord Luft v. Crown Publishers, Inc.*, 772 F. Supp. 1378, 1379 (S.D.N.Y. 1991) ("All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers." (citing *Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985)).

for vicarious copyright infringement."[141]  To adequately plead secondary liability

for infringement under either theory, there must be primary infringement.[142]

## V.      DISCUSSION

### A.      12(b)(1) Motion to Dismiss

The Court has subject matter jurisdiction over the Copyright Act and

the Lanham Act claims, and has supplemental jurisdiction over the related state law

claims pursuant to section 1367 because they arise from the same set of operative

facts as those at issue in the federal claims.

However, not all of the pieces included in the Complaint are properly

before the court.[143]  "Under [section] 411(a) of the [Copyright] Act, 'no civil action

for infringement of the copyright in any United States work shall be instituted until

preregistration or registration of the copyright claim has been made in accordance

with' the Act."[144]  While the Second Circuit recently declined to rule on whether "a

---

[141]    *Premier Fabrics, Inc. v. Woodland Trading Inc.*, No. 13 Civ. 7522, 2014 WL 4230468, at *4 (S.D.N.Y. Aug. 26, 2014) (internal citations omitted).

[142]    *See National Geographic Enters.*, 409 F.3d at 40.

[143]    Defendants have not contested the subject matter jurisdiction of the Court with respect to specific pieces.  However, the Court has an independent duty to determine that it has subject matter jurisdiction.  *See Arbaugh*, 546 U.S. at 501.

[144]    *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014) (quoting 17 U.S.C. §411(a)).

pending application satisfies [section] 411(a)'s  requirement of copyright registration as a precondition to instituting an infringement action,"[145] other courts have observed that "the consensus among courts in the Second Circuit clearly favors the registration approach, under which [a plaintiff's] application for copyright registration cannot sustain a claim for infringement prior to its approval or rejection by the Copyright Office."[146]

Because I agree that an application is not sufficient to bring an infringement action, three pieces included in Plaintiff's copyright infringement claim must be dismissed.  Two pairs of earrings that are part of the Meira T. Fall 2011 Earrings collection[147] have only been submitted as *applications* to the

---

[145]    *Id.* (noting that "even assuming *arguendo* that a pending application constitutes a 'registration' under § 411(a), [plaintiff] had not even filed the *applications* for registration of the relevant works prior to instituting the action claiming infringement of the copyright in these works, as required by the plain terms of the statute.") (emphasis in original).

[146]    *Christians of California, Inc. v. Clive Christian New York, LLP*, No. 13 Civ. 0275, 2014 WL 2465273, at *4 (S.D.N.Y. May 30, 2014), *on reconsideration*,  No. 13 Civ. 027, 2014 WL 3605526 (S.D.N.Y. July 18, 2014) (citing cases).  In a footnote, the magistrate judge noted that "[t]he consensus is, in fact, overwhelming." *Id.* at *4 n.1 (citing cases).  *Accord Corbis Corp. v. UGO Networks, Inc.*, 322 F. Supp. 2d 520, 521–22 (S.D.N.Y. 2004).

[147]    *See* Compl. ¶ 28.

Copyright Office.[148]   Additionally, for the first piece in paragraph 27 of the

Complaint, Plaintiff has included neither a copyright registration nor a pending

application.[149]   However, the Court has subject matter jurisdiction over claims

relating to the trade dress of this design.[150]

### B.      12(b)(2) Motion to Dismiss

#### 1.      General Jurisdiction

There are three potential grounds for general jurisdiction under New

York law.  *First*, New York courts may assert general jurisdiction over a corporate

defendants who "does business" in the state.  *Second*, New York courts may assert

general jurisdiction over a foreign parent company if it has a domestic "agent" that

---

[148]   *See* Application to Copyright Office for Fall 2011 Earring, Ex. F to Compl.;
Compl. ¶ 16 ("Meira T is the owner of . . . Copyright Application[] titled . . .  Fall
2011 Earrings.").  Because Plaintiff does not include these pieces in its trade dress
claim, they are dismissed in their entirety.  *See* Compl. ¶ 28 ("The following
Oriental Infringing Products infringe on Meira T Copyrights.").

[149]   *See* Exs. A-F of Compl.  A similar piece – center stone of natural shape
surrounded by small stones at the center of the chain, with pendants on the side of
the center stone – is part of the 2011 Collection which has a Certificate of
Registration and is included in Exhibit A to the Complaint.  However, this is not
the same product as the one in the Complaint.  The copyrighted design has four
pendants on one side of the chain, and the closest pendant to the center stone is
larger than the other three.  Additionally, there are three stones attached to the
chain on the other side of the stone.  *See* Ex. A to Compl.

[150]   *See* Compl. ¶ 27 ("The following Gemco Infringing Products and Oriental
Infringing Products infringe on Meira T Copyrights *and* Meira T trade dress.")
(emphasis added).

renders services of "sufficient[] importan[ce]" to the foreign parent in the state.[151]

*Third*, New York courts may assert general jurisdiction over a foreign company when its in-state domestic affiliate "is so dominated by the defendant as to be its alter ego."[152]

 In this case, jurisdiction under the first and second grounds would not comport with due process.  Even if Foreign Defendants satisfy the "doing business" standard, Plaintiff has not alleged that Foreign Defendants' operations in New York are "so substantial and of such a nature as to render the corporation at home in that State" making this one of the  "exceptional case[s]"[153] alluded to in *Daimler*.  Further, *Daimler*  "expressed doubts as to the usefulness of an agency analysis . . . that focuses on a forum-state affiliate's importance to the defendant."[154]  Even if Oriental NY could be characterized as the Foreign

---

[151]    *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 96 (2d Cir. 2000) ("In certain circumstances, jurisdiction has been predicated upon activities performed in New York for a foreign corporation by an agent . . . . [when] that New York representative renders services on behalf of the foreign corporation that . . . are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available.").

[152]    *Sonera*, 750 F.3d at 225 (citing *Daimler*, 134 S. Ct. at 759).

[153]    *Id.* at 761 n.19.

[154]    *Sonera*, 750 F.3d at 225.  *See Daimler*, 134 S. Ct. at 759 ("[T]he inquiry into importance stacks the deck, for it will always yield a pro-jurisdiction answer") (internal quotation marks omitted).

Defendants' domestic agent, its activities in the forum state are insufficient to overcome the due process concerns posed by haling foreign companies into an American court.[155]

It is possible, however, that the third ground of general jurisdiction – the alter ego theory – is satisfied in this case.[156]  Whether it is, however, depends on facts that are not yet known.  To determine if "the parent's control is so complete that the subsidiary is a 'mere department' of the parent,"[157] courts must balance various factors.[158]  Plaintiff alleges (1) that Oriental NY is a domestic subsidiary of the Foreign Defendants,[159] (2) that the companies hold themselves out

---

[155]    See *Sonera*, 750 F. 3d at 225–26 (noting that even if the domestic agents' contacts could be imputed to foreign corporate defendants, "the company's contacts with New York do not come close to making it 'at home' there.").

[156]    See *NYKCool A.B. v. Pacific  Int'l Servs., Inc.*, No. 12 Civ. 5754, 2014 WL 3605632, at *5 (S.D.N.Y. July 15, 2014) (noting that as opposed to an agency theory, "[t]he [Supreme] Court [in *Daimler*] did not express any doubt as to the soundness of an alter ego theory of jurisdiction").

[157]    *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 51 (S.D.N.Y. 1999) (citing *Koehler*, 101 F.3d at 865).

[158]    See *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120–22 (2d Cir. 1984) (listing the factors to consider: "(1) common ownership, (2) financial dependency of the subsidiary on the parent corporation, (3) the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities, and (4) the degree of control over the marketing and operational policies exercised by the parent.").

[159]    See Opp. Mem. at 12.

at trade shows and on their website as a single entity,[160] and (3) that Oriental NY is "controlled by Defendants, and [is] merely a sales representative of" Foreign Defendants.[161] Although Defendants disagree on all three fronts,[162] they are vague about how the three companies interact, and serious questions remain as to the true nature of the relationship between Oriental NY and the Foreign Defendants. The only way to resolve this is through jurisdictional discovery. Plaintiff's request for such discovery is therefore granted.

### 2. Specific Jurisdiction

Plaintiff also claims specific jurisdiction over Foreign Defendants under CPLR § 302(a)(2) which permits the exercise of jurisdiction over a "non-domiciliary . . . who . . . commits a tortious act within the state." Plaintiff alleges that Foreign Defendants "ship directly to Oriental NY or to any address in the US [sic]."[163]

On the facts alleged, the Court cannot determine if there is specific jurisdiction over Foreign Defendants. Jurisdictional discovery is granted to

---

[160]   *See id.* at 1, 2, 9.

[161]   *Id.* at 9.

[162]   *See, e.g.*, N.K. Nigam Dec. ¶ 26 ("The list of owners is different for each company and they have separate corporate affairs.").

[163]   Opp. Mem. at 10.

determine if Plaintiff has met its burden to establish specific jurisdiction.

*First*, Plaintiff may show that the Foreign Defendants were present in the state. "CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act."[164] Here, the tortious act was the actual or attempted sale or passing off of the allegedly infringing products to consumers.[165] Plaintiff asserts that the Foreign Defendants "attend trade shows in New York, Las Vegas and Hong Kong at least four times a year. Defendants display jewelry and initiate commitments at these trade shows to customers in New York and the US [sic]."[166] If Plaintiff can show

---

[164]   *Pincione v. D'Alfonso*, 506 Fed. App'x 22, 25 (2d Cir. 2012) (citing *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997)).

[165]   *See Capitol Records, Inc. v. Kuang Dyi Co. of RM*, No. 03 Civ. 0520, 2004 WL 405961, at *1 (S.D.N.Y. Mar. 4, 2004) (holding that "[c]opyright infringement is a commercial tort that is deemed to take place at the point of consumer purchase . . . . In the instant case, [defendant] is alleged to have purposely made sales of an infringing product to entities in New York, thus making it amenable to suit under 302(a)(2)," and noting that "offering even one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state sufficient to imbue the Court with personal jurisdiction over the infringers.") (internal citations and quotation marks omitted); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000) ("Trademark infringement occurs where the attempted passing off of an infringing mark occurs . . . . Offering one copy of an infringing work for sale in New York . . . constitutes commission of a tortious act within the state sufficient to imbue the Court with personal jurisdiction over the infringers.") (internal citations and quotation marks omitted).

[166]   Opp. Mem. at 9.

that the Foreign Defendants committed tortious acts while in New York, then section 302(a)(2) is satisfied.

*Second*, Plaintiff may show that the agency exception applies.  "New York courts have recognized that jurisdiction under § 302(a)(2) may extend to out-of-state individuals who did not themselves commit a tort while physically present in New York but who can be deemed responsible for such a tort based upon theories of agency."[167]  Thus, "if a tort is committed by a person who is physically present in New York but who is acting as an agent of . . . an out-of-state individual, courts may attribute the in-state acts to an out-of-state defendant for the purposes of obtaining personal jurisdiction."[168]  "Whether a defendant's representative is an 'agent' for purposes of § 302(a) hinges on whether the representative acted 'for the benefit of and with the knowledge and consent of [the] defendant and [the] defendant] exercised some control over [the agent] in the matter.'"[169]  Thus, jurisdictional discovery is granted to determine if Oriental NY committed a

---

[167]   *LaChapelle v. Torres*, No. 12 Civ. 09362, 2014 WL 805955, at *4 (S.D.N.Y. Feb. 28, 2014) (citing *In re Satyam Computer Servs. Sec. Litig.*, 915 F. Supp.2d 450, 484 (S.D.N.Y. 2013)).

[168]   *Id.* (citations omitted).

[169]   *Id.* (quoting *Emerald Asset Advisors v. Schaffer*, 895 F. Supp. 2d 418, 430 (E.D.N.Y. 2012) (alterations in original).

tortious act in New York while acting as the agent of the Foreign Defendants.[170]

Jurisdictional discovery is also appropriate to determine whether service on a director of Oriental NY was sufficient as service upon a "mere department" or the agent of the Foreign Defendants.[171]  Such discovery may resolve Defendants' 12(b)(5) motion to dismiss.

### 3.    Jurisdiction under Rule 4(k)(2)

---

[170]    Plaintiff also claims jurisdiction is appropriate under the "passing off" exception, because some courts have held that for copyright and trademark infringement claims, "the physical presence of the defendant is not required for the tort to be viewed [for the purposes of 302(a)(2)] as having occurred in New York.'"  *Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563, 572 (S.D.N.Y. 2006), *aff'd*, 277 Fed. App'x 92 (2d Cir. 2008) (internal citations and quotation marks omitted).  But this theory is only available where the out-of-state defendants solicited business by sending  direct mailings or other such materials with the allegedly infringing marks directly into New York.  *See, e.g.*, *id.* at 566–67.  Here, Plaintiff has not alleged that the Foreign Defendants have solicited business in New York in that way.  Plaintiff only claims that the Foreign Defendants *ship* the allegedly infringing goods to Oriental NY and to customers in New York.

[171]    The facts Plaintiff alleges to support this claim are largely the same as those alleged to support its claims of general jurisdiction under the alter ego theory or specific jurisdiction under the agent exception.  *See* Opp. Mem. at 12–13; Crosby Dec. ¶¶ 14–18.  Furthermore, the legal standards for these theories substantially overlap.  *See Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387–88 (S.D.N.Y. 2002) ("To show an agency relationship, [plaintiff] should show that the subsidiary does all the business which the parent corporation could do were it here by its  own officials.  Alternately, to show that a domestic company is a mere department of the foreign corporation, a plaintiff should address four factors:  common ownership; financial dependency of the subsidiary on the parent corporation; the parent's control over the subsidiary's selection of executives and observance of corporate formalities; the parent's control over the subsidiaries' marketing and operations.") (internal citations and quotation marks omitted).

Plaintiff claims that the Court has jurisdiction over the Foreign Defendants pursuant to Rule 4(k)(2) which provides for jurisdiction if (1) the claim . . . arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) exercising jurisdiction is consistent with the United States Constitution and laws.  But because Plaintiff still contends that the Foreign Defendants are subject to jurisdiction in New York, the second prong of the rule is not met.  If the Court finds that the Foreign Defendants are not amenable to personal jurisdiction in New York, then this rule will be considered.

### 4.   Lanham Act Jurisdiction

The Lanham Act can reach activities occurring outside the United States if the "'contacts and interests of the United States are sufficient to support the exercise of extraterritorial jurisdiction.'"[172]  However, the Lanham Act does not

---

[172]   *Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 505 (S.D.N.Y. 2013) (quoting *Software AG Inc. v. Consist Software Solutions, Inc.*, No. 08 Civ. 389, 2008 WL 563449, at *14 (S.D.N.Y. Feb. 21, 2008)).  *See also id.* (listing "three factors to consider when determining whether the Lanham Act should be applied to extraterritorial conduct: (1) whether the defendant is a United States citizen; (2) whether there exists a conflict between the defendant's trademark rights under foreign law and the plaintiff's trademark rights under domestic law; and (3) whether the defendant's conduct has a substantial effect on United States commerce." (citing *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 642 (2d Cir. 1956)).

create personal jurisdiction where it does not otherwise exist.[173]   If there is personal

jurisdiction over the Foreign Defendants and if Plaintiff can succeed on its claims

under the Lanham Act and if the Court awards injunctive relief, it will then have to

determine whether it can enjoin Oriental NY's infringing activities abroad and/or

Foreign Defendants' infringing extraterritorial activities.

### C.      12(b)(6) Motion to Dismiss

While jurisdictional discovery is ongoing with respect to the Foreign

Defendants, the Court can consider the motions to dismiss for failure to state a

claim brought by the domestic defendants – Oriental NY and N.K. Nigam.

### 1.      Copyright Infringement

#### a.      Ownership of Valid Copyrights and Infringement

Plaintiff has alleged that it owns the copyrights in seven of the pieces

that Defendants allegedly infringed.[174]   Plaintiff also pled "by what acts and during

what time defendant has infringed the copyright"[175] by alleging Defendants'

---

[173]      *See Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 955 F. Supp. 220,
226 (S.D.N.Y. 1997), *aff'd,* 152 F.3d 948 (Fed. Cir. 1998) (noting that in *Vanity
Fair* and other cases, the courts already had personal jurisdiction over defendants).

[174]      *See* Certificates of Registration, Exs. A-C to Compl.

[175]      *Ritani,* 880 F. Supp. at 440 (citing *L.L. Cool J.,* 145 F.R.D. at 36).

continued infringement,[176] which is sufficient to survive a motion to dismiss.[177]

### b.    Actual Copying

Plaintiff has sufficiently pled actual copying by alleging that Defendants had access to the copyrighted works and that similarities between the works are probative of copying.  Plaintiff has alleged that it shows Meira T. jewelry in stores in the United States and abroad in a number of well-known department stores,[178] in trade shows and gift shows in the United States and abroad,[179] and promotes the line through advertising,[180] thereby demonstrating that Defendants had a "reasonable possibility" of seeing its widely disseminated works.

---

[176]    *See* Compl. ¶ 29 ("Defendants continue to display Plaintiff's copyrighted works at their stores and at trade shows"); *id.* ¶ 31 ("In disregard of these written requests, Defendants continue to actively display and sell the Infringing Products at trade shows and in their stores.").

[177]    *See, e.g.*, *Elektra Entm't Grp., Inc. v. Santangelo*, No. 05 Civ 2414, 2005 WL 3199841, at *3 (S.D.N.Y. Nov. 28, 2005) ("This assertion of continuous and ongoing infringement satisfies the pleading requirements applicable to claims for copyright infringement."); *Blagman v. Apple Inc.*, No. 12 Civ 5453, 2013 WL 2181709, at *3 (S.D.N.Y. May 20, 2013) (holding an allegation of defendant's "continued infringement" sufficient, and noting that "courts in this Circuit have held [such a claim] satisfactory to survive a motion to dismiss").

[178]    *See* Compl. ¶ 23.

[179]    *See id.* ¶¶ 24–25.

[180]    *See id.* ¶ 24.

Plaintiff has also alleged that side-by-side comparisons reveal similarities between Plaintiff's works and Defendants' works that are probative of copying.[181]

### c.      Substantial Similarity

As a threshold matter, I consider which elements of Plaintiff's works are not protectible, namely "the elements that 'flow naturally and necessarily from the choice of a given concept,'"[182] like maintaining the rough shape of a stone, or featuring a large center stone.  Further, some elements of the jewelry may be dictated by utilitarian concerns, making those elements unoriginal.  However, the selection and arrangement of unprotectible elements can be sufficiently original to warrant protection.  Here, Plaintiff has plausibly alleged that its designs contain protectible elements.  Plaintiff focuses on the "asymmetrical off-center designs"[183] in which a large center stone is flanked by an uneven number of side pendants. The designs are not necessarily dictated by functionality or the choice of the subject, and while they may combine unprotectible elements, there is sufficient creativity in the selection and arrangement of these elements.

---

[181]      *See id.* ¶ 27.

[182]      *Bill Diodato*, 388 F. Supp. 2d at 392 (citation omitted).

[183]      Compl. ¶ 15.

Plaintiff alleges that Defendants' allegedly infringing products are substantially similar to Plaintiff's works.[184]  This allegation falls within the "discerning observer test," as Plaintiff claims that Defendants' works mimic the look and feel of its works.  Both parties' works share many elements.  For example, both use naturally shaped stones surrounded by small crystal stones on thin chains, with smaller pendants hanging from the chains, on one or both sides of the center stone, in an uneven, asymmetric pattern.  These are features that separately may be unprotectible, but when considered together, produces a specific "look."  Some of the allegedly infringing products are not completely identical to those of Plaintiff – the colors or exact size of the stones are not the same, nor are the number of side pendants.  However, "by definition copying need not be of every detail so long as the copy is substantially similar to the copyrighted work."[185]  Defendants' works have individual features that, when "[t]aken together," evinces

---

[184]    *See id.* ¶ 26.

[185]    *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1093 (2d Cir. 1977) ("[T]he key is the similarities rather than the differences; only a slavish copy would have no differences and a copyright extends beyond a photographic reproduction.") (quotation marks and citations omitted).

a very similar "total concept and overall feel"[186] as Plaintiff's works.

Therefore, Defendants' motion to dismiss the copyright infringement

claim is denied.[187]

## 2. Trade Dress Infringement

Defendants assert that Plaintiff failed to allege the elements of a trade

dress claim.[188]  Defendants are mistaken.  Plaintiff has sufficiently alleged the

---

[186] *Premier Fabrics,* 2014 WL 4230468, at *3 (citing *Tufenkian*, 338 F.3d at 133–34 ("[I]nfringement analysis is not simply a matter of ascertaining similarity between components viewed in isolation. For the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions . . . are considered in relation to one another.")).

[187] Defendants claim they independently created the designs at issue. *See* N.K Nigam Dec. ¶¶ 31–32.  Independent creation is an affirmative defense to a prima facie claim of copyright infringement.  However, this defense cannot be addressed in a motion to dismiss.  Moreover, the Second Circuit has made it clear that independent creation is a question of fact, and should be reserved for the jury. *See Repp v. Webber*, 132 F. 3d 882, 891 (2d Cir. 1997).

[188] Defendants argue that Plaintiff's trade dress is functional, implying that because Plaintiff did not allege "non-functionality" in the Complaint, an essential element of a trade dress claim was not pled. *See* Def. Mem. at 20.  However, invoking the specific phrase "non-functionality" is not necessary to maintain a trademark infringement claim. *See BLT Rest. Grp. LLC v. Tourondel*, No. 10 Civ. 06488, 2011 WL 3251536, at *3 (S.D.N.Y. July 19, 2011) (holding that other allegations in the complaint – including that the trade dress was "unique" and "associated specifically with" the plaintiff's brand – were sufficient to plead non-functionality).  Plaintiff has included sufficient allegations to satisfy the requirement of pleading non-functionality. *See* Compl. ¶¶ 13, 18, 46–48.

scope of the specific trade dress:  "[A] distinctive off-center asymmetric design comprising a large center jewel or piece with the size and/or quantity of pendants on one side being greater than the other side."[189]  Plaintiff only alleges trade dress infringement for four pieces, all of which possess these features.

Plaintiff has also sufficiently alleged that the trade dress has acquired secondary meaning through distinctiveness.[190]  Plaintiff alleges that the features of the trade dress have come to be associated with Meira T. Designs as the source of the goods:  "Meira T has created a distinctive image for the Meira T Collection that serves to identify the products in the minds of consumers."[191]  Plaintiff refers to its advertising and marketing efforts to achieve this recognition,[192] and to "unsolicited press coverage generated for these products at the trade and consumer levels."[193]  Plaintiff claims it has enjoyed "remarkable success in the United States and

---

[189]    Compl. ¶ 18.

[190]    *See Cartier Inc. v. Sardell Jewelry, Inc.*, 294 Fed. App'x 615, 617 (2d Cir. 2008) (listing factors to determine whether a mark has acquired secondary meaning: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use").

[191]    Compl. ¶ 46.

[192]    *See id.* ¶¶ 45–46.

[193]    *Id.* ¶ 45.

internationally,"[194] and that Defendants have sold their infringing products "with the specific intent to exploit" the "widespread recognition" of its trade dress.[195]

However, Plaintiff has merely made conclusory allegations of *actual* customer confusion with no supporting facts.[196] But Plaintiff has pled *likelihood* of confusion by sufficiently alleging the *Polaroid* factors.[197] Plaintiff has claimed that its mark is strong: "the products of Meira T's Trade Dress are recognized by the trade and consumers as being products of a single source – Meira T."[198] Plaintiff has also alleged that there is similarity between the trade dress of the

---

[194]   *Id.* ¶ 47.

[195]   *Id.* ¶ 51.

[196]   *See id.* ¶ 52 ("Defendants' unlawful conduct has led to the ultimate purchasers believing that Defendants' copies with the Meira T Trade Dress are made by Meira T.").

[197]   *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) ("In determining whether there is a likelihood of confusion, we apply the eight-factor balancing test . . . (1) the strength of plaintiff's mark; (2) the similarity of the parties' marks; (3) the competitive proximity of the products; (4) the likelihood that the plaintiff will bridge the gap between the products; (5) actual customer confusion; (6) defendant's intent or bad faith in adopting the mark; (7) the quality of the defendant's product; and (8) the sophistication of consumers.") (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).

[198]   Compl. ¶ 45. *See also id.* ¶ 46 ("Meira T has created a distinctive image for the Meira T Collection that serves to identify the products in the minds of consumers.").

competing products:  Plaintiff calls the allegedly infringing works "look-alike[s],"[199] and has submitted side-by-side comparisons of the works with Meira T Trade Dress and Defendants' allegedly infringing works that show an obvious similarity.[200]  Plaintiff also alleges that the two lines are close to one another in the marketplace, namely, directed towards "the same category of consumers – women interested in high quality, distinctive jewelry"[201] in overlapping cities.  Although Plaintiff has not sufficiently alleged actual confusion, or discussed the sophistication of customers, it has alleged Defendants' bad faith in creating the allegedly infringing works.[202]  Plaintiff has described the high quality of its own jewelry,[203] and claims that in comparison, Defendants products are "inferior."[204]  While none of these factors are dispositive, on balance, Plaintiff has sufficiently alleged likelihood of consumer confusion.

---

[199]  *Id.* ¶¶ 51, 53.

[200]  *See id.* ¶ 27.

[201]  *Id.* ¶ 48.

[202]  *See id.* ¶ 51.

[203]  *See, e.g.*, Compl. ¶ 49 ("The articles are known to be quality items . . . made with precious materials, and embodying expert craftsmanship.").

[204]  *Id.* ¶ 57.

Therefore, Defendants' motion to dismiss the trade dress infringement claim is denied.

### 3.    Federal Unfair Competition

Defendants move to dismiss Plaintiff's federal unfair competition claim, arguing that this claim is merely an attempt by Plaintiff to "use an alleged copyright infringement to bootstrap their claims related to unfair competition."[205] Defendants argue that this claim is "no more than  a claim of copyright infringement dressed up in the guise of the Lanham Act."[206]

However, Plaintiff's Lanham Act claims differ from its copyright claim.  Plaintiff alleges that by misappropriating the Meira T Trade Dress, Defendants are misleading consumers as to the producer of those goods. "Defendants' unlawful conduct has led to the ultimate purchasers believing that Defendants' copies with the Meira T Trade Dress are made by Meira T."[207]  This is

---

[205]    Def. Mem. at 17.

[206]    *Id.* (internal citations omitted).

[207]    Compl. ¶ 52.  *See also id.* ¶ 53 ("Defendants' willful and knowing sale of look-alike Meira T Trade Dress, has caused or is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Meira T, or as to the origin, sponsorship, or approval of Defendants' goods, services or commercial activities by Meira T in violation of 15 U.S.C. § 1125(a)".).

not duplicative of the copyright claim.[208]

An unfair competition claim under the Lanham Act requires a showing of "a valid trademark entitled to protection under the Act, and (2) defendant's actions are likely to cause confusion."[209]  I have already determined that for the purposes of a Rule 12(b)(6) motion, Plaintiff has demonstrated that the Meira T Trade Dress is a protectible interest under the Lanham Act.  Additionally, the analysis for likelihood of confusion for a trade dress infringement claim is the same as for an unfair competition claim.[210]  Therefore, Defendants' motion to dismiss the federal unfair competition claim is denied.

### 4.     State Law Unfair Competition

The New York law of unfair competition claim is subject to the same

---

[208]     *Cf. Expressway Music*, 2013 WL 5345969, at *3 ("Here, regardless of the copyright status of these videos, [Plaintiff] alleges facts about the misuse of its trademark on products it did not create, namely because [plaintiff's] registered trade dress and trademark appear on [defendant's] media-and format-shifted tracks. These are cognizable claims under the Lanham Act.").

[209]     *Estate of Ellington ex rel. Ellington*, 812 F. Supp. 2d at 192 (citations and quotation marks omitted).

[210]     *See Expressway Music*, 2013 WL 5345969, at *3 (citing *Regal Jewelry Co., Inc. v. Kingsbridge Intern., Inc.*, 999 F. Supp. 477, 490 (S.D.N.Y. 1998) ("Courts consider likelihood of confusion on an unfair competition claim and thus apply the same analysis as they do in a trademark infringement claim.").

analysis as the Lanham Act claim, except for the additional requirement of bad faith.  The Complaint alleges that "Defendants, with knowledge of the widespread recognition of the Meira T. Trade Dress . . . . and with the specific intent to exploit that recognition, have made and sold copies of the jewelry all having the distinctive Meira T Trade Dress."[211]  This demonstrates bad faith.  Therefore, Defendants' motion to dismiss the state unfair competition claim is denied.

### 5.    State Law Deceptive Business Practice

Plaintiff has asserted claims for deceptive trade practices.  To prevail, Plaintiff must demonstrate "consumer injury or harm to the public interest" which requires a showing that "the public's health or safety is at stake as a result of the alleged infringement."[212]  Courts in this circuit have held "that trademark or trade dress infringement claims are not cognizable under these statutes unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement."[213]  Plaintiff has failed to make any of these allegations.

---

[211]    Compl. ¶ 51.  *See also id.* ¶ 66 ("Defendants' deliberate and/or intentional manufacture . . . of look-alike Meira T designs.").

[212]    *Securitron*, 65 F.3d at 264.

[213]    *DO Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 408–09 (S.D.N.Y. 2009) (citing *National Distillers Prods. Co., LLC v. Refreshment Brands*, Inc., 198 F. Supp. 2d 474, 486–87 (S.D.N.Y. 2002)).

Accordingly, Defendants' motion to dismiss this claim is granted.

### 6.   Individual Liability

Plaintiff claims that N.K. Nigam "is responsible for the control, management, operation, and maintenance of the affairs of Oriental NY,"[214] and "[t]he acts and wrongful conduct complained of were done with Nigam's active assistance, cooperation, acquiescence, and procurement, and he derives financial benefit therefrom."[215]  Defendants move to dismiss the claims against N.K. Nigam.

### a.   Lanham Act

Plaintiff has properly alleged personal liability for N.K. Nigam under the Lanham Act.  The required showing has been made: as President of Oriental NY, he would have "authorized and approved the infringing acts"[216] done by the company.  As previously noted, it is unnecessary to show that Nigam had

---

[214]   Compl. ¶ 11.  Plaintiff also alleges that Nigam should be held personally liable for the infringing activities of the Foreign Defendants.  *See id.*  It is undisputed that he is President of Oriental NY.  *See* N.K. Nigam Dec. ¶ 1.  However, his relationship to the Foreign Defendants is unclear.  Whether Nigam is personably liable for any infringement by the Foreign Defendants must wait for a determination of his relationship to those entities, and whether they can be liable for direct infringement.

[215]   Compl. ¶ 11.

[216]   *Bambu Sales, Inc.*, 683 F. Supp. at 913–14.

knowledge of the infringing nature of the activity.[217]  Therefore, Defendants'

motion to dismiss N.K. Nigam as a defendant with respect to the trade dress and

unfair competition claims is denied.

### b.    Copyright Act

Plaintiff argues that it has sufficiently plead the "contributory and

vicarious liability" of N.K. Nigam[218] under the Copyright Act.

### i.    Contributory Liability

Defendants argue that the claim against N.K. Nigam must fail because

Plaintiff did not plead the necessary elements of contributory infringement, namely

that N.K. Nigam had knowledge of the infringing activity.[219]  While the Complaint

does not state that N.K. Nigam knew of the infringing activity, the Complaint does

allege that Defendants generally "knowingly infringed upon . . . Meira T's

Copyrights."[220]  This is a sufficient allegation of personal knowledge by N.K.

---

[217]    *See id.* at 913.

[218]    Opp. Mem. at 18.

[219]    *See* Def. Mem. at 16 ("[T]he Complaint fails to make the required scienter allegations, instead couching its allegations against them in broad, conclusory terms.").

[220]    Compl. ¶ 38.  *See also id.* ¶ 40 ("Defendants' willful and knowing sale of jewelry products, which directly copy designs for which Meira T owns copyright registrations, is in violation of [the Copyright Act.]").

Nigam.  Plaintiff also has alleged a sufficiently material contribution by N.K.

Nigam because as President of Oriental NY, all of the acts of the company,

including the infringing acts, were done with his "active assistance, cooperation,

acquiescence, and procurement, and he derives financial benefit therefrom."[221]

### ii.    Vicarious Liability

Plaintiff has made sufficient allegations to state a claim against N.K.

Nigam for vicarious liability.  As President of Oriental NY, Nigam has the right

and ability to supervise the company's activities.[222]  Additionally, Plaintiff has pled

that Nigam obtained personal financial benefit from the alleged infringement.[223]

Therefore, Defendants' motion to dismiss the claims against N.K.

Nigam is denied.

### E.    Forum Non Conveniens

Defendants move to dismiss the case under the doctrine of forum non

conveniens, because the Foreign Defendants are based respectively in Hong Kong

---

[221]    *Id.* ¶ 11.  *Cf. Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 304
(S.D.N.Y. 2011) ("[A]ctivities that lead to contributory liability are . . . personal
conduct that encourages or assists the infringement . . ." (citing *West Publ'g Co.*,
158 F.3d at 706)).

[222]    *See* Compl. ¶ 11 (claiming N.K. Nigam is "responsible for the control,
management, operation, and maintenance of the affairs of Oriental NY").

[223]    *See id.*

and India and neither "do[es] business in the United States,"[224] and "most of the jewelry at issue in this case was sold in Hong Kong and manufactured in Thailand."[225]   Interestingly, Defendants did not suggest an alternate forum that would be more appropriate to hear these claims, but merely stated that "it is clear that the proper forum for this case is not New York."[226]   A decision regarding Defendants' motion to dismiss based on forum non conveniens will be reserved following a determination of personal jurisdiction over the Foreign Defendants.

## VI.    CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are DENIED in part, and GRANTED in part.  Additionally, Plaintiff's motion to conduct jurisdictional discovery is GRANTED.  A conference is scheduled for December 8th at 4:30 P.M.  The Clerk of the Court is directed to close these motions [Dkt. Nos. 18 and 41].

---

[224]    Def. Mem. at 24–25.

[225]    *Id.* at 25.

[226]    *Id.*

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November 24, 2014

61

**-Appearances-**

**For Plaintiff:**

Kalpana Nagampalli, Esq.
Nupur Shah, Esq.
Stephen Edward Feldman, Esq.
Steven Michael Crosby, Esq.
Feldman Law Group
220 East 42nd Street
New York, NY 10017
(212) 532-8585

**For Defendants:**

Michael Stuart Horn, Esq.
Archer & Greiner, P.C.
Court Plaza South, West Wing, 21 Main Street
Hackensack, NJ 07601
(201) 498-8529

Patrick Papalia, Esq.
Archer & Greiner, P.C (NJ2)
21 Main Street, Suite 353 Court Plaza South East
Hackensack, NJ 07601
(201) 342-6000